FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 FEB -7 PM 1: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

EDWINA CLARK,                          )
                                       )
        Plaintiff,                     )
                                       )          Civil Action No.
v.                                     )
                                       )          00-AR-3296-S
ALFA INSURANCE CO.,                    )
                                       )
        Defendant.                     )

ENTERED

FEB - 7 2001

## MEMORANDUM OPINION

Before the court is defendant's motion to disqualify J. Allen
Schreiber ("Schreiber") and all attorneys associated with his law
firm, Schreiber & Petro, P.C.  They now represent plaintiff, Edwina
Clark  ("Clark")  in  the  above  styled  case.   Defendant,  Alfa
Insurance  Co.  ("Alfa"),  contends  that  Schreiber's  continued
representation  of  Clark  would  violate  Standards 5(b)(8) and 6(a)
of  the  Alabama  Code  of  Ethics  for  Mediators ("Alabama Mediator
Code"),  as  well  as  Rule 1.9 of the Alabama Rules of Professional
Conduct ("Alabama Rules").  Defendant also moves for the imputation
of Schreiber's alleged disqualification to his firm.  As far as the
court has been able to ascertain, this is the first time an Alabama
federal court has been faced with the issue of the propriety of a
former  mediator's  representing  a  client  against  one  of  the
mediating parties.   In  fact,  the  issue  may  be  new  to  American

jurisprudence.   It requires the court to determine what, if any, conflict of interest standard should apply to attorney-mediators. That   determination,   given   the   novelty   of   the   issue,   not surprisingly implicates larger questions concerning the authority under which federal district courts regulate the professional conduct of attorneys.   For reasons set out more fully in this memorandum opinion, which is much longer than the court initially intended, the court will deny defendant's motion.

### Facts

The seed of the controversy was planted on December 29, 1997, when Kathleen Wright ("Wright"), an employee in Alfa's Huntsville office, filed suit against Alfa.   In her suit, Wright charged that while employed as a Customer Service Representative, Alfa had discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964.   The case, duly assigned to another judge of this court, was given case number CV-97-C-3344-NE ("*Wright*") and proceeded apace.   For the purposes of this analysis the court assumes that throughout the course of CV-97-C-3344-NE   Alfa's   employment   practice   liability   insurance carrier("EPLIC") co-ordinated Alfa's defense.   According to the court record in that action, of which this court takes judicial

2

notice, Wright, on March 11, 1999, moved the court to continue the action "so the parties may attempt mediation." *Wright* Doc. # 40. The judge to whom that case was assigned stamped the motion "Granted". *Wright* Doc. # 41. In April of 1999, the parties in CV-97-C-3344-NE jointly selected Schreiber, then of the law firm Lloyd, Schreiber & Gray, as their mediator. In addition to practicing law, Schreiber held himself out, and still holds himself out, as a mediator; it was in this capacity, and not as a person who was required to have a law license, that Alfa and Wright jointly employed him. Mediators do not need to be lawyers and often are not lawyers. According to the declaration of Holly Garrity ("Garrity"), who at the time oversaw employment practice claims for Alfa's EPLIC, she had private conversations with Schreiber during the course of the mediation "concerning the amount of settlement and the interest of [the EPLIC] in resolving this matter." She states, too, that prior to Wright's suit Schreiber had been used as a lawyer by the EPLIC to defend its insureds in EPLIC cases, and "[i]n this capacity, he was familiar with [Alfa's] practices, procedures and philosophy with respect to claim management." Whether or not this experience as a lawyer to Alfa's EPLIC helped Schreiber discharge his role as mediator or was, in

fact a disqualifying fact, are not questions seeking resolution in this case.   In any event, the mediation must have been successful because the *Wright* case was dismissed with prejudice on August 27, 1999.   *See Wright* Docs. # 43, 44.

A little over a year later, on November 15, 2000, Schreiber filed Clark's complaint wherein Clark, currently Assistant to the District Supervisor, apparently a customer service position in Alfa's Montgomery office, alleges that she suffered age and race discrimination at the hands of Alfa in violation of Title VII of the Civil Rights of 1964.   Alfa filed its motion to disqualify on December 11, 2000.

Alfa claims that Schreiber, as a result of acting as a mediator in *Wright*, possesses confidential information regarding its management of customer service employees and its practices in managing and settling employment cases covered by its EPLIC. Citing Garrity's declaration, Alfa claims that Schreiber came to this knowledge by virtue of conversations he had in *Wright* with Alfa's representatives and with Garrity.   Noting that both *Wright* and the present action involve Title VII race discrimination claims by customer service employees and that its EPLIC covers both suits, Alfa asks that the court agree with its conclusion that the

4

confidential information Schreiber acquired during the *Wright*
mediation makes his present representation impermissible.   For
authority, Alfa cites the Alabama Rules and the Alabama Mediator
Code, both of which have been adopted by the Supreme Court of
Alabama.   Schreiber, as a mediator registered with the Alabama
Center for Dispute Resolution, is bound by the terms of the latter
code, as well as by the former.  He is not, however, named in the
long list of ADR neutrals maintained by the United States District
Court for the Northern District of Alabama.

For his part, Schreiber has not filed any materials in defense
of the pending motion.   During oral argument, he conceded that he
had private caucuses with Garrity and Alfa during the *Wright*
mediation, but he disputes Alfa's contentions that the information
he acquired as a result of those conversations was confidential and
is relevant to the present action.   In addition, he says, without
contradiction, that Clark initiated the lawyer-client relationship.

### Discussion

Alfa says that Schreiber's actions constitute a violation of
rules contained in both the Alabama Mediator Code and the Alabama
Rules and that a violation of either set of rules compels
disqualification.   However, there is no language in either the

5

Alabama Rules or in the Alabama Mediator Code to suggest that either applies to members of the bar of any federal court. *See In re Finkelstein*, 901 F.2d 1560, 1564 (11th Cir. 1990) (citing *In re Snyder*, 472 U.S. 634, 645 n.6, 105 S.Ct. 2874, 2880 n.6 (1985)). Federal law, whether a case, statute, or rule, determines the applicability to a lawyer in federal court of any standard, including state standards, to any allegedly disqualifying circumstances. *See id.*; *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). Under federal law, there are two sources of authority for removing an attorney from a case: a court's local rules (which can incorporate state rules) and the inherent power of a court to supervise the professional conduct of attorneys in that court. *See In re Finkelstein*, 901 F.2d at 1564 (citing *In re Snyder*, 472 U.S. at 645 n.6, 105 S.Ct. at 2880 n.6) (inherent powers); *Greer's Refuse Service, Inc. v. Browning-Ferris Indus. of Del.*, 843 F.2d 443, 446 & n. 7 (11th Cir. 1988)(citing *Frazier v. Heebe*, 482 U.S. 641, 645, 107 S.Ct. 2607, 2611 (1987))(local rules).

In the Eleventh Circuit, a district court's approach to a motion to disqualify varies according to the circumstances in which the motion is raised. *See Schlumberger Technologies, Inc. v.*

6

*Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). If the conduct threatens the operations of the court or the judicial process as a whole, the district court may regulate that conduct under its broad inherent power to conduct the general business of the court. *See id.* (citing as examples *United States v. Dinitz*, 538 F.2d 1214, 1220-1221 (5th Cir. 1976), and *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1207 (11th Cir. 1985)). In recognition of the district court's responsibility to supervise the cases before it, and of the need for sure and swift responses to disruptions of the orderly administration of the judicial system, the Eleventh Circuit gives great deference to lower court decisions to disqualify under those circumstances. *See id.*, at 1558, 1561. However, when such concerns are not in play, the Eleventh Circuit "sensibly tailor[s]" the discretion of a district judge and requires that the court rely on more than unfettered inherent power to hold an attorney to a "transcendental code of conduct." *Id.*, at 1561. The district court must base a disqualification on a finding that the attorney violated a specific standard found in a set of rules applicable in the relevant jurisdiction. *See id.*, at 1560-1561; *Ganobsek v. Performing Arts Center Auth.*, 2000 WL 390106, at *1 (S.D.Fla. Mar. 4, 2000).

Because Schreiber's assumed conduct does not threaten to undermine the authority of this court or to disrupt the course of the proceedings, defendant's motion falls into the latter category. Therefore, the court must see if it can identify an applicable rule of conduct governing practitioners in this court and then determine whether Schreiber has violated it. *See Schlumberger*, 113 F.3d at 1560-1563; *Ganobsek*, 2000 WL 390106, at *1. Upon such a finding, the court may then, considering binding and persuasive federal case law, decide whether or not the ethical lapse warrants disqualification. *See Schlumberger*, 113 F.3d at 1562-1563.

### I.   Determination of the Applicable Standard

#### A.   Local Rules

Local Rule 83.1(f) ("Standards for Professional Conduct; Obligations") describes the conduct required of members of the bar of this court:

> Each attorney who is admitted to the bar of this court . . . is required to be familiar with, and shall be governed by, the Local Rules of this court and, to the extent not inconsistent with the preceding, the Alabama Rules of Professional Conduct adopted by the Alabama Supreme Court and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct, except Rule 3.8(f) thereof.

N.D.Ala. Loc.R. 83.1(f); *see Cox v. American Cast Iron Pipe Co.*,

847 F.2d 725, 728 n.4 (11th Cir. 1988) (citing the predecessor to N.D.Ala. Loc.R. 83.1(f)).   The rule goes on to provide that violation of these standards can result in discipline, including removal from a case.  Thus, it establishes a pecking order for the sets of rules this court applies and provides that violation of a standard set forth in one of those sets can result in disqualification.  Given the local rules' limited attention to the subject of ethical standards, and given that Local Rule 83.1(f) allows the Alabama Rules to trump the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules"), of the three sets of rules this court most often relies on the Alabama Rules.  Nevertheless, Local Rule 83.1(f) directs that the court first conduct an examination of the local rules.

The court finds only one local rule of potential application to the facts of this case.  Local Rule 16.1, "Scheduling Orders; Alternative Dispute Resolution," allows parties to pursue, with permission of the judge, alternative dispute resolution ("ADR") "as authorized and provided in the ADR plan adopted by the court." N.D.Ala. Loc.R. 16.1.  The court's ADR plan, attached as Appendix A to the Local Rules as adopted on December 1, 1993, explains three options:  Open ADR Track, Mediation Track, and Med/Arb [Mediation/Arbitration] Track.  *See* N.D.Ala. Loc.R. app.  Provision

Number 10 of both the Mediation Track and Med/Arb Track states that the mediating, or neutral, party "is disqualified as a witness, consultant, attorney, or expert in any pending or future action relating to the dispute, including actions between persons not parties to the mediation process." N.D.Ala. Loc.R. app., at 6, 10. In contrast, the Open ADR Track does not even broach the issue of confidentiality. *See id.*, at 2. Instead, it leaves that matter, as well as almost all matters that might arise in ADR, to the mutual agreement of the parties. *See id.* Therefore, if Alfa had presented proof that Wright and Alfa selected the Mediation or Med/Arb Tracks, the court should turn to the issue of whether Schreiber, as a member of the bar of this court who was a neutral/mediator in court-annexed ADR, has contravened the standard set out in the Provision 10, particularly whether *Wright* "relates to" the present action.

There is nothing in the record upon which logically to conclude that Wright and Alfa chose the Mediation or Med/Arb Tracks. The court cannot simply rely upon Alfa's broad statement that "attorney Schreiber served as mediator in the mediation" of *Wright*. First, parties electing the Mediation or Med/Arb Tracks must use a mediator listed on this court's "ADR Panel of Neutrals".

10

Schreiber's name is not now and was not at the time of the *Wright* mediation contained on that scroll. Second, while Wright requested continuance of her suit because the parties had agreed to try "mediation", the word "track" does not follow the word "mediation" nor is there any mention of this court's ADR plan. *Wright* Doc. # 40. The term appears to be used in a common sense, as a reference to the process of mediation in general, and not as proof of which of the three possible tracks of court-annexed ADR Wright and Alfa chose. Thus, on the record before it, the court must travel on the assumption that Wright and Alfa obtained the services of Schreiber pursuant to the Open ADR Track.

Having no evidence of a written mediation plan that might contain relevant language relevant to the disqualification issue, the court has exhausted its examination of the consequences, if any, of the local rules. It turns now to the Alabama Rules. Alfa urges the court to apply Alabama Rule 1.9, which states:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to

a client or when the information has become generally known.

Alabama Rules of Prof'l Conduct R.1.9.   In support of the application of this rule, Alfa primarily relies on *Poly Software v. Su*, 880 F.Supp. 1487 (D.Utah 1995).[1]   In *Poly Software*, defendant sought to disqualify plaintiff's counsel, who had previously mediated a dispute brought against defendant and plaintiff, then

---

[1]Defendant's reliance on federal cases to give meaning to state rules is not improper.  As noted *supra*, notwithstanding the fact that Local Rule 83.1(f) permits applicable local rules to trump inconsistent Alabama Rules, Local Rule 83.1(f) establishes a prominent role for the Alabama Rules. However, unlike some district courts which have incorporated state rules of conduct, this court has not specified whose interpretations of those state rules it considers binding, or at least persuasive.  *See, e.g., Worldspan, L.P. v. Sabre Group Holdings, Inc.*, 5 F.Supp.2d 1356, 1357 (N.D.Ga. 1998) (noting that N.D.Ga. Loc.R. 83.1(C) states that the district court's interpretations of state rules apply); *Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F.Supp. 1383, 1387 (N.D.Cal. 1992) (observing that under N.D.Cal. Loc.R. 110-3 state case law on professional responsibility issues binds the court).  Although this court does not consider itself bound by state interpretations because of Local Rule 83.1(f)'s silence on the matter, it does take state law as persuasive guidance, for two reasons.  First, having incorporated standards originally adopted by the highest court in the state court system, it only stands to reason that this court would look to courts in that system for their interpretations.  Secondly, this court's incorporation of the Alabama Rules is no mere coincidence: it allows attorneys who practice in both the state and federal forums in this state to comply with essentially one set of rules.  It is in keeping with this step toward intra-state consistency that this court takes as persuasive guidance the interpretations of state standards by the state authorities.

Therefore, unless state interpretations would lead this court astray under the limits of the statutory grant for local rules, this court first turns to state cases and other state authority on the relevant rules for guidance.  *But see, e.g., McCallum v. CSX Transportation, Inc.*, 149 F.R.D. 104, 108 (M.D.N.C. 1993) (eschewing state court interpretations of the applicable state code).  However, where, as here, neither the parties nor the court have found state cases on the precise issue, citation to authorities outside the state is proper.  Their persuasiveness will be bounded, of course, by the resemblance the out-of-state rules bear to the corresponding Alabama Rule.

business partners, by their prior employer.  *Id.*, at 1488-1492.
The court turned to Rule 1.9 of the Utah Rules of Professional
Conduct ("Utah Rules"), which differs, in pertinent part, from
Alabama's Rule 1.9 in that it employs the phrase "substantially
factually related" instead of the phrase "substantially related" to
describe the necessary nexus between the two matters under Rule
1.9(a).  *See id.*, at 1491-1494.  Borrowing the "substantially
factually related" phrase from Utah Rule 1.9, the *Poly Software*
court fashioned its rule: "Where a mediator has received
confidential information in the course of mediation, that mediator
should not thereafter represent anyone in connection with the same
or a substantially factually related matter unless all parties to
the mediation proceeding consent after disclosure." *Id.*, at 1494.

Even if this court found *Poly Software* persuasive, it finds
unpersuasive Alfa's argument for measuring Schreiber's conduct by
the standard provided in Alabama Rule 1.9 because it requires an
after-the-fact recasting of Schreiber's and Alfa's earlier
relationship.[2]  There is no disputing that Alfa and Wright engaged

---

[2]The remainder of the arguments that Alfa either impliedly or expressly
raises in its motion, including following *Poly Software*'s approach of drawing
on the applicable version of Rule 1.9 to generate the court's own rule,
adopting directly the *Poly Software* rule, or directly applying the Alabama
Mediator Code, will not be addressed in this section of this court's analysis.
Acceptance of these arguments would result in the enforcement of a rule that

Schreiber as mediator; he did not become involved in that case to *represent*, in the capacity of a lawyer, the interests of one side or the other. Yet, it is a clear prerequisite of Alabama Rule 1.9 that a *lawyer-client relationship* exist. *See Ex parte Intergraph Corp.*, 670 So.2d 858, 860 (Ala. 1995). The rules of conduct provide guidance for lawyers in a range of situations, and Rule 1.9's restrictions on the clients that a *lawyer* can represent are based on the *lawyer's* responsibilities to specific individuals: those with whom he has had a lawyer-client relationship. *See* Alabama Rules of Prof'l Conduct R.1.9 cmt. By its terms, then, Rule 1.9 does not apply.

Overlooking the fact that Rule 1.9 does not apply might be justified by what some would argue is the functional equivalence of mediators and lawyers. This likeness led the *Poly Software* court

---

could not have been found by Schreiber in any of the three sets of professional conduct rules that this court looks to, as set out in Local Rule 83.1(f). Standards not found in the court's local rules can be invoked only under the court's inherent power to supervise the conduct of attorneys. Accordingly, their applicability is collectively addressed *infra* in the court's discussion of the reach of its inherent power.

This treatment applies as well to ABA Model Rule 5.7 ("Responsibilities Regarding Law-related Services"). That rule's absence from the Alabama Rules marks an inconsistency between the Alabama Rules and the ABA Rules, therefore it is not applicable under the Local Rule 83.1(f). It could only be invoked, if at all, under the court's inherent power.

to look to Utah Rule 1.9.[3]  That court deemed lawyers and mediators
essentially similar in how and how frequently they each receive
confidences from their clients.  *See Poly Software*, 880 F.Supp. at
1494.  Based on this observation, the application of the standard
in Rule 1.9, a rule that addresses concerns of confidentiality and
loyalty, is logical.  Yet, significantly, the *Poly Software* court
did not transpose Rule 1.9 part and parcel to the mediator context.
Considering the probable widespread effects that a Rule 1.9
standard would have on the availability of mediators, the court
balanced the "substantially factually related" language by
restricting its application to situations where a mediator actually
receives confidential information.  *See id.*  This court, too, is
concerned about the aggregate effects of transplanting in its
entirety a standard crafted for the context of an adversarial
process to a system set up as an alternative to that process.
Therefore, no matter the discrete logic favoring an individual
application of a standard cut out for the lawyer-client
relationship to a mediator-client relationship, the court will not
remold Schreiber's prior relationship with Alfa for the purposes of

---

[3]The other case cited by Alfa, *In re County of Los Angeles*, 223 F.3d 990
(9th Cir. 2000), largely relies on *Poly Software* in viewing the "substantially
factually related" standard as appropriate for a lawyer who, as a judge, had
participated in mediation or settlement efforts.  *Id.*, at 993-94.

deciding Alfa's motion to disqualify.  If and when some entity with authority to do so adopts a rule that would preclude what Schreiber proposes to do, all lawyers in North Alabama who want to be mediators can (1) change their minds; (2) limit their law practices to mediation; or (3) expose themselves to ethical violation complaints.[4]

Refusal to deem Schreiber's role as a mediator to constitute the practice of law does not mean that his earlier role as a mediator is totally irrelevant to his present role as a lawyer. Schreiber's prior mediation must be looked at in terms of the effect that the obligations that Schreiber incurred by undertaking that activity may have on him as he now appears before this court, as Clark's representative, if he is allowed to do so.  Alabama Rule 1.7(b) ("Conflict of Interest: General Rule"), which is identical to ABA Model Rule 1.7(b), provides the basic standard for the duty of loyalty owed current clients:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited

_____

[4]Practitioners and academics have called for rules of conduct specifically tailored to lawyer-mediators, or, more broadly termed, lawyer-neutrals.  The debate as to the proper standards is on-going.  *See, e.g.,* Duane W. Kronke, *ADR Rules to be Added to Rules of Professional Conduct*, 18 Alternatives to High Cost Litig. 108 (2000) (comparing rules proposed for inclusion in the ABA Rules by the ABA's Ethics 2000 Commission and by the CPR-Georgetown Commission on Ethics and Standards in ADR to existing Minnesota rules).

> by the lawyer's responsibilities to another client or to
> a third person, or by the lawyer's own interests, unless:
>     (1)    the    lawyer    reasonably    believes    the
> representation will not be adversely affected; and
>     (2) the client consents after consultation.

Alabama Rules of Prof'l Conduct R.1.7(b). This provision differs
from Alabama Rule 1.9 in two important respects. First, the source
of the conflict does not have to be a party who previously had a
lawyer-client relationship with the lawyer. *See Berry v. Saline
Memorial Hospital*, 907 S.W.2d 736 (Ark. 1995) (applying ABA Model
Rule 1.7 to an attorney/former hospital board member whose law firm
brought suit against the hospital because the attorney-board member
had  gained  access  to  relevant  confidential  information  in
fulfilling responsibilities as a board member); ABA Comm. on Ethics
and Prof'l Responsibility, Formal Op. 98-411 (observing that a
lawyer consulted by another lawyer about the consulting lawyer's
case  may  be  obligated  to  protect  the  confidentiality  of  the
information  disclosed);  ABA  Comm.  on  Ethics  and  Prof'l
Responsibility,  Formal  Op.  97-407  (commenting  that  a  lawyer
testifying as expert owes a continuing duty of confidentiality to
the party for whom he testifies). Second, the rule safeguards the
interests of current clients by examining the lawyer's ability to
discharge his duty of loyalty to that client in light of other

obligations. *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 98-411; ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 97-407.

These distinctions reveal why Alabama Rule 1.7(b) applies to the facts underlying defendant's motion to disqualify. Schreiber's claimed violation of the Alabama Mediator Code does not provide an independent ground for disqualification because this court has no authority under its local rules to enforce those standards. However, Alfa's allegation that Schreiber's representation of Clark creates that violation is tantamount to alleging that Schreiber cannot fulfill both his duties to Clark and his duties to Alfa as provided for under the Alabama Mediator Code. As a party to this action, as well as the "third party" as that phrase is used in Alabama Rule 1.7(b), if there is a reasonable question as to whether Schreiber can honor both duties, Alfa has the right to bring those concerns to the attention of the court. *See* Alabama Rules of Prof'l Conduct R.1.7 cmt. The outside obligations come to this court fully formed, and the court need only ascertain the nature of the obligations and inquire into their impact on Schreiber's duty of loyalty to Clark.

18

B.   Inherent Power

Regulation of attorney conduct does not begin, nor does it end, with what is permitted under the local rule.  It is axiomatic that a court may use its inherent power to regulate attorney conduct.  *See In re Snyder*, 472 U.S. at 645 n.6, 105 S.Ct. at 2880 n.6; *In re Finkelstein*, 901 F.2d at 1564.  Furthermore, the ability of a court to take an action under this power, such as setting the standard by which attorneys' conduct will be measured, is not automatically supplanted just because the same action is permitted pursuant to legislative grant.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47-50, 111 S.Ct. 2123, 2134-2135 (1991) (finding that congressional action via Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 did not evidence an intent to limit courts' traditionally implied power to sanction bad-faith attorney conduct by shifting attorney's fees); *Biocore Medical Technologies, Inc. v. Khosrowashahi*, 181 F.R.D. 660, 664 (D.Kan. 1998) (holding that inherent power to disqualify attorneys is not supplanted by federal rules).  In fact, the Fifth Circuit, after it spawned the Eleventh Circuit, established a requirement that district courts look beyond the state rules incorporated in expressly adopted local rules to determine the applicable ethical norm for motions to disqualify and

to consult "national standards of legal ethics". *See In re Dresser Indus., Inc.*, 972 F.2d 540, 544-45 (5th Cir. 1992); *see also FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1311-1312, 1314 (5th Cir. 1995); *In re American Airlines*, 972 F.2d 605, 609-10 (5th Cir. 1992). Under the Fifth Circuit's approach to the exercise of inherent power to regulate attorney conduct, a district court might examine the ABA Model Rules, the ABA Model Code of Responsibility, or the most recent draft of the Restatement of the Law Governing Lawyers. *See, e.g., In re Dresser*, 972 F.2d at 544-45. As for the local rules, and the professional conduct rules they reference, their applicability is left to federal law, but, at the least, they are "not irrelevant." *FDIC*, 50 F.3d at 1312; *see In re American Airlines*, 972 F.2d at 605. The Tenth Circuit has followed this approach. As the *Poly Software* court noted prior to addressing the merits of the motions before it, under Tenth Circuit law disqualification motions "'are decided by applying standards developed under federal law .... [and are thus] governed by the ethical rules announced by the national profession and considered "in light of the public interest and the litigants' rights."'" *Poly Software*, 880 F.Supp. at 1490 (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994), in turn quoting *In re*

*Dresser*, 972 F.2d at 543).

However, a district court within the Eleventh Circuit may be prohibited in certain respects from relying on its inherent common law power to adopt a "national standard of ethics", or any standard not announced in its local rules, when deciding a motion to disqualify.  In *Schlumberger*, the Eleventh Circuit circumscribed district courts' inherent supervisory authority to disqualify attorneys when the alleged conduct does not disrupt the daily administration of justice.  It did so by reaffirming *In re Finkelstein*'s expression of a district court's duty to refrain from using its supervisory powers to rest a disqualification decision on an unwritten, subjective view of the bounds of ethical conduct. *See Schlumberger*, 113 F.3d at 1560-61 (relying chiefly on *In re Finkelstein*, 901 F.2d at 1562-1565, as well as *Norton v. Tallahassee Memorial Hosp.*, 689 F.2d 938, 941-42 (11th Cir. 1982)). That latitude, both courts reasoned, provided insufficient notice to attorneys of what they can and cannot do.  *See id.*; *In re Finkelstein*, 901 F.2d at 1564-1565.  However, the *Schlumberger* court expressed in more concrete terms the limit on a district court's inherent power.  Where the alleged ethical violation does not cause a disruption of the day-to-day administration of justice:

> [T]he court may not simply rely on a general
> inherent power to admit and suspend attorneys,
> without any limit on such power. The court must
> clearly identify a specific Rule of Professional
> Conduct which is applicable to the relevant
> jurisdiction and must conclude that the attorney
> violated that rule - a legal conclusion subject to
> full appellate review - for its order to be upheld.

*Schlumberger*, 113 F.3d at 1561; *see Ganobsek*, 2000 WL 390106, at

*1. Thus, whereas *In re Finkelstein* emphasized the negative duty

of courts, *Schlumberger* made clear that they are also under an

affirmative one.

Satisfaction of this affirmative duty may preclude using a

standard not referenced in the local rule, whether it is a

provision of the Alabama Mediator Code, the *Poly Software* rule, ABA

Model Rule 5.7, or some other standard that might aspire to the

title of "National Ethical Standard", to determine whether an

ethical violation has occurred. Application of the Alabama

Mediator Code would contravene *Schlumberger* because it applies to

mediators, not lawyers. Less clear is whether *Schlumberger*'s

affirmative duty also forestalls application of a rule of

professional conduct for lawyers when that rule can only be brought

in under a court's inherent power. Although the *Schlumberger*

court seemed to contemplate the local rule as the means by which an

ethical standard would be made "applicable to the relevant

22

jurisdiction", it did not expressly require use of such a method. *See Schlumberger*, 113 F.3d at 1561-1562 nn.8 & 9. Arguably, then, inherent power could enable a court to "make applicable" a specific, objective standard of professional conduct that was not incorporated in the local rule and judge the members of its bar by it.

Even this technical reading does not free the court to exercise its inherent power in such a way. "Notice" was the touchstone for the analysis in *In re Finkelstein*, and, as *Schlumberger* shows, the "notice" requirement may be met by utilizing rules of conduct referenced in a local rule. *See Schlumberger*, 113 F.3d at 1561-1562 nn.8 & 9; *In re Finkelstein*, 901 F.2d at 1564-1565. This court finds that the rules incorporated in Local Rule 83.1(f) are the governing rules and has already found, *supra*, that a standard set forth in one of them addresses the conduct at issue. To now by-pass that standard in favor of a norm found in a greater, less-well defined universe of authority undermines the element of predictability necessary for notice consistent with "due process". Therefore, the combined effect of the underlying concern for notice in *Schlumberger* and *In re Finkelstein* and the applicability of a standard incorporated

23

under the local rule prohibits such an exercise of inherent power by this court.

Assuming *arguendo* that *Schlumberger* does not preclude the application of one of the standards implicated in defendant's motion, and therefore that the court does possess inherent power to apply a standard other than Alabama Rule 1.7(b), the court declines to do so. Given the circumstances in which Alfa made its motion to disqualify, this court's consideration of the motion breaks down broadly into two distinct inquiries: (1) was there an ethical violation and, (2) if so, does it warrant disqualification. *See Schlumberger*, at 1561-1562; *see also In re Potash*, 1993 WL 543013, at *8, 15-16 (D.Minn. Dec. 8, 1993).[5] Under this bifurcated analysis, violation of an ethical standard announced in binding rules of conduct does not automatically result in removal of the offending attorney.[6] Determining whether a duly identified, arguable ethical lapse warrants disqualification requires focus on the fairness to and the possible deleterious effect on the

---

[5]The *In re Potash* court's indeterminate reference to *In re Finkelstein* does not dissuade this court from favorably citing the District Court of Minnesota's opinion. *See In re Potash*, 1993 WL 543013, at *19 n.2.

[6]This is only appropriate. Rules of professional conduct primarily focus on precisely that, conduct, not overarching concerns about the consequences of violating those guidelines. *See* Alabama Rules of Prof'l Conduct, Scope ("The Rules simply provide a framework for the ethical practice of law.").

underlying litigation, considerations that reflect the concerns of the judicial system as a whole. Therefore, in this second step of the analysis, this federal court is bound by and relies on the pronouncements of other federal courts. *See, e.g., Schlumberger*, 113 F.3d at 1562-1563; *Nuri v. PRC, Inc.*, 5 F.Supp.2d 1299, 1303-1304 (M.D.Ala. 1998). It is true that determination of the actual base-line ethical standards also reflects the concerns that all federal courts share; however, this court has previously, and duly, spoken to that issue with the force of federal law: a local rule. *See Weil v. Neary*, 278 U.S. 160, 169, 49 S.Ct. 144, 148 (1929); *In re Medrano*, 956 F.2d 101, 103 (5th Cir. 1992). While this court will not try to describe precisely the extent to which it will abdicate to state rule makers the responsibility for setting ethical standards for members of the bar of the United States District Court for the Northern District of Alabama, it will try not to cross federal constitutional and statutory bounds and will try not to revisit the wisdom of any such abdication on a case-by-case basis. This court need not use its inherent power to pick an ethical standard beyond those referenced in its local rules in order to preserve a role for federal law in the disqualification determination. Likewise, this restraint allows the court to meet

25

the understandable expectations of members of this court's bar that are based on the express language and obvious implications of Local Rule 83.1(f).   They know where to find the ethical standards, which, if stepped over, trigger the possibility, if not the probability, of disqualification.

## II.   Application of the Standard

Alabama Rule 1.7(b) states that if a lawyer's representation of a client "may be materially limited" by his own interests or responsibilities owed a third-party, then the lawyer may only proceed with representation if his belief that his client's interests will not be adversely affected is a reasonable one and if his client consents to continued representation after consultation. The expansive "may be materially limited" phrase results in a threshold that is satisfied by even a slight probability that the limitation will come to pass.   However, it does require that the impact of the limitation, if it were to apply, be significant.   If this point is reached, a lawyer will be in violation of the rule unless 1.7(b)(1) and 1.7(b)(2) are met.   1.7(b)(1) requires a reasonable belief by the lawyer that the representation will not be adversely affected.   The belief is unreasonable if a disinterested lawyer would reasonably conclude that the client should discontinue

representation because of the probability that the lawyer could not
"consider, recommend, or carry out an appropriate course of action
for the client because of the lawyer's other responsibilities or
interests." Alabama Rules of Prof'l Conduct R.1.7 cmt. When this
test is satisfied, the only further requirement is client
consultation and consent under 1.7(b)(2). However, if the lawyer's
belief is unreasonable, the client's informed decision is
unnecessary.

Alfa suggests that two provisions in the Alabama Mediator Code
conflict with Schreiber's representation of Clark. Standard
5(b)(8) states:

> A mediator must avoid the appearance of a conflict of
> interest both during and after the mediation. Without
> the consent of all the parties, a mediator shall not
> subsequently establish a professional relationship with
> one of the parties in a substantially related matter.

Read as a whole, this provision, while it may have other purposes,
protects the integrity of a prior or on-going mediation from being
undercut by the specific act of the mediator. In prohibiting the
mediator from establishing relationships with a mediation
participant in a *substantially related matter*, but not necessarily
relationships with non-participants who take positions adverse to
a participant in the substantially related matter, the standard
guards against the perception that the mediator was not impartial

27

during the mediation.  The taboo relationships are the kind that would be most likely to cast doubt on the mediator's neutrality: those that involve the mediator with the type of parties who would most benefit from the mediator's inside information, and that concern the type of matters in which that information would be most beneficial.  In giving all mediation participants veto power over the relationship, this standard provides a certain guarantee that they will not later have the mediator as an adversary.  However, this protection extends only to "substantially related matters" involving a professional relationship with another mediation participant.

Schreiber's duty to Alfa under Standard 5(b)(8) does not impermissibly threaten his duty to Clark under Alabama Rule 1.7(b). Even if *Wright* and the present action are substantially related under the meaning of that provision (and that is debatable), Schreiber has never established a professional relationship with a participant in the *Wright* mediation.  As far as the court is aware, Schreiber has no relationship with Wright, and Clark's suit against Alfa does not create a professional relationship between Schreiber and Alfa, even a dysfunctional one.  There is no likelihood that any duty Schreiber possibly owe Alfa could materially affect

28

Schreiber's duty of loyalty to Clark, and even if it did, Alfa would have no standing to complain.  Clark is not complaining.

Standard 6(a) of the Alabama Mediator Code is not as easily dispatched.  It states: "A mediator shall preserve and maintain the confidentiality of all mediation proceedings except where required by law to disclose information gathered during the mediation." Unlike Standard 5(b)(8), this provision does not address subsequent or contemporaneous events as they reflect on the integrity of the prior mediation, but instead, and more broadly, requires the continuing preservation of confidences shared during the course of a mediation.  Furthermore, even if Alfa did a 180 degree turn and consented to Schreiber's representation of Clark, Alfa could not lift the Standard 6(a) obligation from Schreiber's shoulders; any exigency short of the force of law will not remove this obligation.

The duty announced in Standard 6(a) satisfies 1.7(b)'s threshold potential material limitation test.  The lone exception that would allow disclosure does not apply, and if this duty does in fact come to bear on Schreiber, its restriction on his representation might be considerable.  Whether Schreiber's duty of confidentiality will mature during this action, resulting in an adverse effect on his representation of Clark, as prohibited by 1.7(b)(1), is problematical.  To decide the question for the

29

purposes of ruling on Alfa's motion to disqualify first requires an examination of the nature of the confidences Alfa says Schreiber gained during *Wright*. Although Alfa expressly or impliedly places Schreiber's exposure to confidential information in the context of the *Wright* mediation, Garrity's declaration distinguishes the information Schreiber gained through his mediation role from the information he acquired by defending the EPLIC's insureds in prior employment related suits. In the latter capacity, he acquired familiarity with Alfa's claim management "practices, procedures and philosophy", but no argument that Schreiber should be removed on this basis has been made. In contrast, as a mediator in *Wright*, Schreiber had discussions with Garrity "concerning the amount of settlement" and was apprized of the EPLIC's "interest . . . in resolving [the] matter." *Id*. These statements constitute the only evidence relating to the quality and quantity of the "confidential information" that Schreiber received during the mediation. They do not support Alfa's much broader assertions.

When combined with evidence concerning the factual and legal connections between Wright's suit and Clark's suit, the court finds Garrity's affidavit insufficient to support the conclusion that Schreiber has contravened 1.7(b)(1). The evidence must establish

the pertinency of the so-called confidential information. *Cf.* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 97-407 (suggesting the criterion of usefulness of the acquired information in determining whether there is a Rule 1.7(b)(1) violation when a confidentiality duty is the competing outside obligation). The more pertinent the information, the more serious and likely the conflict between competing duties. Therefore, accepting, as the court must because the force of law is not implicated here, that Schreiber is bound by Standard 6(a), his ability to "consider, recommend, and carry out an appropriate course of action" for his client is inversely proportional to the degree of pertinency of the information he acquired in the earlier role.

Alfa's evidence is suggestive, perhaps even highly so, of the usefulness to Schreiber of the information he gained as mediator, but it leaves too much room for supposition or conjecture for the court say how much it might help him in representing Clark. Every mediator, like every lawyer, learns from experience.[7] Assuming

---

[7]Federal judges have been known to resign and to re-enter the law practice. If Alfa's evidence establishes sufficient basis for disqualifying Schreiber, its rationale would require that former judges, "new" lawyers as it were, limit their practices and that of their firms so as not to undertake the representation of any of the vast number of entities with whom the former judges became familiar during her time on the bench, or their opponents. After all, a judge absorbs a lot of valuable information about the litigants in her court.

that Clark and Alfa will undertake settlement negotiations, as the court always hopes for, the more overlap between the facts that will determine the comparative strength of the parties' bargaining positions and the facts that establish the similarities between *Wright* and the present action, such as the identity of defendant, the relationship between defendant and plaintiff, the department in which plaintiff worked, and the race discrimination cause of action, the more useful may be Schreiber's knowledge of the settlement amount in *Wright*. However, the differences between the two cases, such as the location of the offices where plaintiff worked, the position of plaintiff within the customer service department, and Clark's age discrimination claim (a claim not made by Wright), as well as more particular, unrevealed facts going to the relative merits of the two complaints, diminish the utility of the information gleaned from *Wright*. Secondly, Garrity's statement that she imparted to Schreiber the EPLIC's "interest" in resolving *Wright* constitutes a vague, yet unsurprising, piece of evidence. Every insurance company that wants to stay in business is interested in reaching a reasonable settlement, especially if it has already consented to mediation.

Even though Schreiber meets the disinterested lawyer standard

of 1.7(b)(1), he still must satisfy 1.7(b)(2). Although he may in fact have already done so, the record contains no evidence that Schreiber has consulted with Clark and he has gained her consent to represent her despite his prior history as a mediator to Alfa. Therefore, there is nothing to prove that, strictly speaking, he has not violated Alabama Rule 1.7(b). Because any violation of that rule is imputed to Schreiber's firm under Alabama Rule 1.10, all lawyers associated with Schreiber & Petro, P.C., his present firm (or all lawyers with the successor to the firm of which Schreiber was a partner when he mediated *Wright*?), would also violate the Alabama Rules if Clark chose one of their number to represent her. But, as pointed out previously, Clark is not complaining. She should be given a chance to make an intelligent and informed choice of counsel.


III.  <u>Whether the Ethical Violation Warrants Disqualification</u>

In the opinion of this court, Schreiber's possible violation of Alabama Rule 1.7(b) vis-a-vis Clark does not merit disqualification. Alfa perhaps has standing to raise the question by virtue of the arguable threat to the integrity of the underlying litigation, and Alfa has properly raised the question at a very early stage of the proceedings. Nevertheless, such an arguable

33

ethical violation does not automatically result in intervention by a court.   *See Schlumberger*, at 1562-1563; *Nuri*, 5 F.Supp.2d at 1303-1305.  Removal from a case, in particular, is an extraordinary remedy because it overrides client's choice of counsel.   *See Ganobsek*, 2000 WL 390106, at *1.   This, of course, assures an informed choice.

Considering that the only basis for disqualification has been raised *sua sponte*, this court considers the violation, if any, a technical one, and will deny defendant's motion to disqualify Schreiber and his firm.  However, the court will deny Alfa's motion without prejudice, so that if Schreiber does not present evidence of his compliance with Alabama Rule 1.7(b)(2) by February 24, 2001, the court will consider the technical violation substantive, and will entertain a renewed motion by defendant to disqualify Schreiber and his present law firm.

DONE this ___7___ day of February, 2001.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

34