```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

FILED
02 MAY 28 PM 3:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

EDWINA CLARK,

    Plaintiff,

v.

ALFA INSURANCE COMPANY,

    Defendant.

CIVIL ACTION NO.

00-AR-3296-S

ENTERED
MAY 28 2002

## MEMORANDUM OPINION

Before the court is the motion for summary judgment filed by defendant, ALFA Insurance Company ("ALFA"), in this Title VII action brought by plaintiff, Edwina Clark[1] ("Clark"). Clark, who is black, brought suit against Alfa because Alfa promoted Jill Yaser, ("Yaser"), who is white, to district supervisor, a promotion Clark wanted but did not receive according to Clark, because of her race. Clark also alleges, in a separate count, that Alfa retaliated against Clark because she complained of discrimination. Clark initially alleged that she was discriminated against because of her age, but she has since withdrawn this claim.

---

[1] The plaintiff's first name has been spelled in papers filed before this court as "Edwina" and "Edwenia." Because "Edwina" is the spelling that appears on the docket sheet, it is the spelling used in this opinion.



**Undisputed Pertinent Facts**

Clark worked for Alfa in the accounting department from 1980 until she resigned in 1992. In 1994, Alfa re-hired Clark to work in the marketing department, and later that year transferred her to district assistant, assisting the district supervisor, Judy Rittenour ("Rittenour"). Clark still holds this position today. In early 1999, upon hearing that Rittenour was retiring, Clark told Rittenour's supervisor, district manager, David Christenberry ("Christenberry"), that she would like to be promoted to district supervisor. Chistenberry and regional administrator, Susan Adcock ("Adcock"), promoted Yaser and not Clark. The other disappointed candidates are three white women and one black woman.

**Analysis**

In order to prove discrimination, Clark must first establish a *prima facie* case of discrimination. *Denney v. City of Albany*, 247 F. 3d 1172, 1183 (11th. Cir. 2001). Both parties agree that Clark has established a *prima facie* case of discrimination, in that Clark is a member of a protected class, applied for and was qualified for the job that was given to a non-member of the class. Because Clark has established a *prima facie* case of discrimination, she is entitled to a presumption of discrimination. Alfa can and does wipe out this presumption by articulating the non-discriminatory reason for promoting Yaser

2

that Yaser was better qualified for the district supervisor position. Being better qualified is a legitimate non-discriminatory reason. Therefore, Alfa has overcome the initial presumption of discriminatory motive. *See Walker v. Prudential Property and Casualty Insurance Co.*, 286 F. 3d 1270, 1276 (11th. Cir. 2002). The burden, therefore, shifts back to Clark to prove that Alfa's proffered reason is merely a pretext for unlawful discrimination. *Denney* at 1183. Alfa's motion for summary judgment as it relates to the discrimination claim will stand or fall on whether Clark can meet her burden of proving pretext.

This court must resolve all disputes of fact in Clark's favor. If Clark has amassed enough evidence to allow a trier of fact to believe that Alfa's proffered reason is nothing but a pre-text for discrimination, Alfa's motion on the discrimination claim must be denied. If, however, no reasonable trier of fact could find for Clark on the necessary element of pretext, the action will end here and Alfa's motion for summary judgment will be granted. To be more specific, this court will ask the question, "[w]ould the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker* at 1276.

Clark argues that she was more qualified for the position than Yaser. If all Clark can show is that she was a little more

qualified than the others, this court will not grant relief. "To show pretext, however, [she] must show more than superior qualifications; rather [she] must show that [she was] so much more qualified that the disparity virtually jumps off the page and slaps one in the face." *Walker* at 1277. Clark lists a few reasons why she believes that she is more qualified for the position than Yaser. Taken together, and considered with all of the uncontroverted evidence that suggests that Yaser is more qualified, this court's face does not feel slapped.

As the name of the position implies, the job of district supervisor entails supervision. Clark has, from time to time, filled in as a supervisor of customer service representatives, but never for more than a few days at once. Christenberry believed that Yaser had worked as a district supervisor for a few years in the late 1970s and early 1980s.[2] Furthermore, Yaser was a supervisor of customer service representatives, a CSR III in the Alfa idiom, for the twelve years immediately prior to her

---

[2] Clark disputes that Yaser's job, which then bore a different title, is the same as the job now known as district supervisor. Even after the court, because it is sitting in summary judgment, credits Clarks assertion, it nevertheless finds that Christenberry, at the time he made the decision to promote Yaser, believed that Yaser had been a district supervisor because that is what district manager Hardy Bryan had told him, and there is no evidence to the contrary. (Christenberry depo. at 109). Because Clark is arguing what Christenberry and Adcock's state of mind was, or was not, Christenberry is entitled to rely upon beliefs that he later learned were false, but were held in good faith at the time the decision was made. Again, this court notes that this belief has not been proven false, only that, for purposes of summary judgment, and only for purposes of summary judgment, this court assumes that the belief is false. Being misinformed is not the best way to run a corporation, but it does not evidence racism.

4

promotion.  On the question of who had more supervisory experience, Yaser is the clear winner.

Clark has a good relationship with all of the agents and customer service representatives.  Yaser does also.  Indeed, several agents, without prompting, recommended Yaser for the position.  Clark points out that Adcock asked no agents about Clark.  During deposition questioning Clark's attorney implies that had they been asked, they might have given a good recommendation and that the failure to ask belies racism.  He further implied that the only fair thing to do would have been to ask.  Clark, and her attorney, miss the point.  While colleagues are more likely to give a recommendation when asked, a solicited recommendation is not as valuable as an unsolicited recommendation.  The unsolicited recommendation is rarer, and much more telling.  An unsolicited recommendation indicates a much greater feeling of approval than a solicited opinion.  Almost anyone will give a response when asked, but only the strongly convicted will, on his own initiative, seek out the decision maker and voice his opinion.  To compare Yaser's unsolicited recommendations to Clark's solicited recommendations would be unfair to Yaser.  The undisputed evidence shows that while Clark had a good relationship with the agents, Yaser had a better relationship.

Clark also maintains that she "had more experience

5

performing the actual duties of a District Supervisor than Yaser did." (Clark's Br. in Oppn. to Summ. J. at 19). Assuming the truth of this statement, an assumption not mandated by the undisputed evidence, it is not enough to overcome the above mentioned reasons why Yaser was the better choice. Alfa could succeed by conceding that Yaser was the worse choice of the two, as long as Alfa showed that Yaser's inferiority was not "so obvious as to "jump[] off the page and slap[] one in the face." *Walker* at 1277. Clark effectively surrenders when she argues <u>not</u> that she was much better qualified, but that she "is just as qualified for the position as Yaser." (Clark's Br. in Oppn. to Summ. J. at 28). Title VII did not take away the legitimate exercise of discretion by an employer when evaluating employees for possible promotion.

    Having failed to bear her burden through direct or comparator evidence, Clark invokes "the inexorable zero" in her quest to meet her burden. Specifically, Clark notes, through statistical evidence that there has never been a black district supervisor. This court does not have a statistician on its payroll, and therefore cannot be precisely sure what constitutes "meaningful statistical analysis." Clark argues that "[s]ometimes, the numbers speak for themselves." (Clark's Br. in Oppn. to Summ. J. at 25). In spite of its ignorance in the ways of statistics, the court is willing to say that asking numbers to

6

speak for themselves does not qualify as "meaningful statistical analysis."

Clark argues that because there are zero black district supervisors, she is relieved from producing meaningful statistical analysis by an "inexorable zero" exception to the usual requirement of statistical analysis. All of the cases that this court has been able to find grant this exception only in pattern and practice actions, which this is not. To the extent that Clark is asking the court to extend the "inexorable zero" exception to individual cases of discrimination, this court declines. Clark has therefore failed to meet her burden and Alfa's motion for summary judgment is due to be denied on the Title VII allegation.

Still remaining before this court is Clark's retaliation claim. As long as Clark had a good faith belief that she was discriminated against, she can maintain a retaliation claim even after the failure of her underlying discrimination claim. *Gupta v. Florida Board of Regents*, 212 F. 3d 571, 586 (11th Cir. 2001). Although Clark's Title VII claims cannot survive summary judgment, she brought them in good faith.

In order to state a *prima facie* case of retaliation, Clark must show that (1) she suffered an adverse action (2) that she engaged in a protected activity and (3) that there is a causal connection between the activity and the action. *Gupta* at 587.

7

It is not disputed that Clark, by filing her E.E.O.C. complaint, and by filing this action engaged in a protected activity. Therefore, this court will evaluate her claims based on whether she suffered a cognizable, adverse employment action and whether any evidence exists to show causality.

> Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality ... to be cognizable under the anti-retaliation clause. In evaluating what actions meet that required level of substantiality, we recognize that Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace.

*Gupta* at 587. (internal citations and punctuation omitted). This court will first examine the four incidents of which Clark complains for substantiality. If any pass that test, this court will then determine if there is any evidence of causality. If there is such evidence, the retaliation claim will stand as to these surviving incidents.

The first incident alleged by Clark has been labeled by the parties as the "Skort" incident. Clark wore a skort, which this court believes to be a garment that contains elements of both a skirt and a pair of shorts, to work on a casual Friday. Upon seeing Clark in the skort, the recently promoted Yaser told Clark that the skort was inappropriate and that she would have to go home and change. Clark asked if, instead, she could stay a few

more hours, leave work early, and use some of her annual leave time to cover the missed hours. Yaser agreed. Clark claims that the loss of these hours of annual leave time are the detriment she suffered as a result of Yaser's alleged retaliation. This claim fails because Clark chose to leave early. There is no evidence before this court that if Clark had immediately left work and gone home to change, she would have had to use any of her annual leave. Furthermore, even if Clark had to consume one hour of leave to go home and change, the loss of that hour does not rise to the level of substantiality required by Title VII and is therefore not actionable.

Clark next complains that Yaser did not send copies of certain emails to her. Soon after they received the emails, agents called Clark to ask her questions about the content of the emails. Because she did not have the emails, Clark was unable to answer the questions put to her by the agents. Clark claims that Yaser deliberately and purposefully did not send her copies of the email to retaliate for Clark's E.E.O.C. complaint. Yaser's failure to send to Clark copies of the emails is nothing more than an "ordinary tribulation[] of the workplace." As such, it is not actionable.

Clark argues that since Yaser has been promoted, her job duties have decreased. Clark's testimony, however, indicates that her duties have changed. Furthermore, when asked how she

9

likes the change, she responded "It's okay." (Clark Depo. at 38.) "It's okay" are not the words of an employee aggrieved seriously enough to merit relief under Title VII's anti-retaliation provision. Clark has suffered no actionable harm by this act of putative retaliation. Therefore, it is not actionable.

Clark's final example of Alfa's alleged retaliatory animus is that she did not do as well as she would liked to have done on the evaluation given to her in December 2001 by Yaser. Clark argues that as a result of this substandard evaluation, Alfa gave her a raise lower than it would have after a better evaluation. Alfa points out that Clark has always received evaluations, and therefore raises, that are above average for her region and that Clark is the highest paid district assistant in the Southern region. This is all good for Clark, but, loss of pay, even the loss of an increase in pay, is a real, tangible, and, for the purposes of Title VII, legally substantial detriment. On the issue of the December 2001 evaluation, Clark has met her burden of substantiality.

This court must now determine whether there is enough evidence to allow a reasonable finder of fact to find a causal link between the E.E.O.C. charge and the December 2001 evaluation. "To establish a causal connection, a plaintiff must show that the decision-maker[s] [were] aware of the protected

conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta* at 590 (internal punctuation omitted). The evaluation occurred long enough after the filing of the E.E.O.C. complaint that a jury could infer that Yaser knew of the complaint, even though there is no direct evidence of such knowledge. While Clark has evidence to support an inference of notice, she has nothing to show that the two actions were not wholly unrelated. The only evidence that Clark presents in support of this retaliation claim is her declaration that the evaluation was inaccurate. This declaration only supports her allegation that she received an inaccurate evaluation, not that the inaccuracy was motivated by retaliatory animus. She has presented no evidence of causation.

Because the first three incidents do not rise to the necessary level of substantiality, and because Clark has not amassed enough, or any, evidence to allow a reasonable finder of fact to conclude that the substandard evaluation was caused by retaliatory animus, Alfa's motion for summary judgment is due to be granted as to the retaliation claims.

Clark's brief ends with a section entitled "Salary Claims" in which she seems to argue a salary discrimination cause of action. Without reaching the question of whether such a claim is covered by Clark's pleadings, this court will briefly analyze Clark's claim. Clark argues that "[t]o show discrimination based

11

upon pay, a plaintiff must show that she is paid less than a similarly situated white employee. (Clark's Br. in Oppn. to Summ. J. at 32, *citing Gibbons v. Auburn University*, 1058 F. Supp. 2d 1311 (M.D. Al. 2000)). Clark then argues that a white employee, one Allyson Harris ("Harris"), "has received pay increases which are greater than the pay increases which plaintiff has received." (Clark's Br. in Oppn. to Summ. J. at 32). Clark has presented no evidence, other than a hearsay statement by Harris, that Clark did not receive a pay increase as large as Harris received. Furthermore, even if Harris did receive a pay increase larger than Clark, there is no evidence that, after Harris received this pay increase, that Clark is paid less than Harris. Because there is no evidence to support this claim, it is due to be dismissed, to the extent that it existed at all.

By separate order, this court will grant the motion for summary judgment filed by Alfa, and dismiss with prejudice the action filed by Clark.

DONE this 28th day of May, 2002.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE